# CHARLESTON.

## TAYLOR *v.* DORR.

Submitted January 29, 1897—Decided April 17, 1897.

PARTNERSHIP—*Compensation of Partner—Special Agreement.*
One partner is not entitled to compensation for his services
in the common business, though they may exceed those of
his co-partner, in the absence of a special agreement.
(p. 352.)

Appeal from Circuit Court, Webster county.

Suit by A. L. Taylor against C. P. Dorr. Decree for de-
fendant, and plaintiff appeals.

*Affirmed.*

A. L. TAYLOR and L. M. LA FOLLETTE, for appellant.

MOLLOHAN & McCLINTIC, for appellee.

BRANNON, JUDGE:

C. P. Dorr and A. L. Taylor formed a partnership for
the practice of law, which continued a short time. After
dissolution, Taylor sued Dorr for a settlement of the part-
nership accounts, and the case was referred to a commis-
sioner, and upon his report a decree was entered in favor
of Dorr against Taylor, and Taylor appeals. The commis-
sioner returned a report merely stating that Dorr claimed a
certain account and Taylor a certain account, and that the
evidence was conflicting, and decided nothing himself, but
referred all matters in difference to the decision of the
court, and the court then made an order saying, "This
cause is recommitted to Commissioner C. B. Conrad to
complete his report;" and then Conrad—it is said, without
notice—did file a report finding a balance in favor of Dorr,
which was carried into decree by a special judge. Taylor
filed nine exceptions to the report.

One of his points against the decree is that the case was
heard at the first term after the report was filed. Ordi-
narily this is error, under the case of *Findley* v. *Smith*, 42
W. Va. 299 (26 S. E. 370) ; but the reason of that decision
has no application here, because Taylor did file exceptions

to this report, and therefore had the benefit of the delay which the statute gives. The whole object of the statute was accomplished in his favor by his filing exceptions. He did not at any subsequent time offer any other exceptions, or take any other steps in the case. If, even, he could have tendered any exceptions at the next term after the entry of this decree, he did not offer them.

Another exception is that the order did not authorize another settlement. In fact, there had been no settlement by the commissioner. Taylor says that the report was vague in the fact that it states that he was indebted to Dorr on settlement of partnership accounts twenty-one dollars and thirty-eight cents, and then goes on and brings Taylor out in debt ninety-one dollars and thirty-five cents. Now, the commissioner distinctly states that that twenty-one dollars and thirty-eight cents is a balance shown in favor of Dorr by Exhibits 1 and 2, and it enters only as one of the tabulated items from which the balance of ninety-one dollars and thirty-five cents is taken. Other distinct items are combined with it, and they together make up the balance decreed. Taylor excepts, because the evidence before the commissioner is clearly in favor of the plaintiff, entitling him to recover three hundred and seventy-eight dollars and seventy-five cents. Turning to the Taylor account, filed with his deposition, he says that Dorr is indebted to him in certain amounts, specifying them, amounting to three hundred and eleven dollars and seventy-five cents. One of the items therein is two hundred and fifty dollars for work in the partnership over and above his equal share of the partnership business. I know no law which, in the absence of special agreement, measures the labor of one partner by that of the other, and allows one for any balance of work done by him over that done by the other. The law is well settled that one partner is not entitled to claim compensation for his services in business without a special contract for compensation, though one partner attends almost exclusively to the business. If there is no agreement for compensation to him, he is not entitled to compensation therefor. *Forrer* v. *Forrer's Ex'rs*, 29 Grat. 134; *Patton* v. *Calhoun's Ex'rs*, 4 Grat. 138, denies even a surviving partner compensation for settling up the partnership business. The article of partner-

ship provided for a half fee in new cases to each one, and gave Taylor on old cases one-fourth the fees. This claim would be repugnant to that agreement in writing. But Taylor says that after it was executed they made a special agreement that Dorr was to pay Taylor a reasonable compensation for his services in suits in which Dorr was a party. Dorr swears that no such agreement was made. It seems improbable from the fact that that agreement shows the parties contemplated such cases when they formed the partnership, for it expressly says that Taylor should attend free of charge to all cases in which Dorr was a party, and Dorr should likewise attend to all cases in which Taylor was a party. The evidence of the two conflict on this matter. The commissioner in the circuit court found with Dorr on it. Every presumption is made in favor of the correctness of the decision of the commissioner. If the evidence is conflicting, the lower court rarely interferes with his finding on the facts. Much more so is this the rule in the appellate court, when that finding has been approved by the circuit court. *Hartman* v. *Evans*, 38 W. Va. 670 (18 S. E. 810) ; *Reger* v. *O'Neal*, 33 W. Va. 159 (10 S. E. 375). Another charge in Taylor's account is for half of a sixty dollar item for taking care of the law office, sweeping and cleaning the same, and making fire therein. There can be no such charge as this. Partners do not charge each other with such items. Of course, money actually outlaid in keeping the law offices in order would be a different thing under agreement or usage of the partners, but there are no circumstances shown in this case to justify that charge. The cleaning and warming of the office was for the benefit of one partner as well as the other. The office belonged to Dorr ; the library belonged to Dorr. Taylor had the use of both and no charges were made by Dorr therefor, and surely they would offset this claim for cleaning and warming the office ; and Dorr swears that he attended to that largely himself, and the commissioner has found against that item. Taylor charges half of the salary paid to a type-writer, fifty dollars, and the commissioner allowed half of forty dollars for this charge, so there is here a discount of only five dollars ; and the commissioner has allowed Taylor half of the charge made against the firm for coal, so that all that was tenable

of the account filed by Taylor with his deposition was allowed. Charges against Taylor are made by the commissioner for various fees collected, of small amount; one, the fee of Chapman of forty dollars, half charged to Taylor. Taylor admitted that he collected it. And also a Harlow fee of ten dollars, and also some of the Isenhart commission, and the other items debited to him are supported by evidence satisfactory to the commissioner and circuit court. If any errors could be sustained to any items charged to Taylor, they would fall far below one hundred dollars, the amount of jurisdiction of this Court. Taylor, after the dissolution, sold all his interest in the law firm, including all fees and claims due the firm, and all suits and fees to become due in the firm suits, to H. C. Thurmond, and of course had no longer any interest in what yet remained to be collected.

The most serious point presented by the applicant is that no notice was given him of the time and place of the completion of the report by the commissioner. When the commissioner first had the case before him, both sides took evidence and filed papers. When it went back to him, no further evidence was taken, no papers filed, and nothing further done. The commissioner simply, upon the materials already in the case, under the notice theretofore given, determined what items he would allow and disallow to and against the parties. The first question that occurs here is whether, considering that this was an order not simply recommitting the case, or referring any other matters, but simply that the commissioner should, upon the materials already in the case, complete his report, it required notice. I do not think so. The parties had had their full day before the commissioner, and this simply was action by the commissioner in deciding upon the matters already shown before him. In *Gardner* v. *Field*, 5 Gray, 600, it was held that an assessor to whom a case is recommitted to reassess the damages according to a rule laid down by the court may proceed to assess the damages without a rehearing, if the case was previously fully heard before him. In that case—almost similar to this—the assessor had made a report in the alternative that, if one theory should be adopted, he fixed the damages at one sum, and, if on a different basis, a different sum, and it was recommitted, and he

made a second report, fixing the damages at a certain sum, without further notice, and without evidence or hearing; and Chief Justice Shaw says: "Whether the assessor should give notice to the parties, and hear further evidence, upon a recommitment, appears to us to depend upon no fixed rule, but upon the circumstances. Upon a general recommitment, and without special instruction, *prima facie* we should think it would be necessary to give notice. To hear the parties before deciding a matter of controversy seems to lie at the foundation of justice. But where, from the nature of the objections, and the grounds on which a recommitment is ordered, it is manifest that the object is to enable or require the assessor to revise his own doings in form or substance, or to correct some error of his own, requiring no new evidence or argument, notice is not required. The assessor states that he had a full report of the evidence and full minutes of the argument. The recommitment was to enable him to make a positive, instead of an alternative, assessment upon the exercise of his own judgment on the materials already before him. We think the objection to this report that he gave no notice and had no further hearing is not well founded." in *Kellogg* v. *Putnam*, 11 Mich. 344, where there was a reference to compute the amount on a basis fixed by the interlocutory decree, and no inquiry into the facts is to be had, the defendant is held not entitled to notice of the confirmation of the report or of the hearing thereof. It does not appear from the commissioner's report whether Taylor had notice served upon him, but in one of his exceptions he says that he or his attorney was not notified that the settlement was to be made up for that term of court, but, on the contrary, he and his counsel understood that it would not be, from which we may fairly infer that they knew of the proceedings before the commissioner. In *McCandlish* v. *Edloe*, 3 Grat. 330, it was held, where a notice had been published by a commissioner, and one made complaint that he had no personal notice, he must show by his own affidavit or otherwise that he had no such information of the proceedings of the commissioner as would have enabled him to attend. In *Whiteside* v. *Pulliam*, 25 Ill. 285, it was decided that under the Illinois practice in chancery—which is very similar to ours—there must be affidavit to

support an exception to a report denying notice of the hearing before the master, and showing that the attorney also had no notice. I am not to be understood as saying or intimating that parties have not clearly the right to have notice of the time and place fixed by commissioners in chancery for executing orders of reference. Our statute and the uniform practice require this. But under the particular circumstances of this case, it being simply the completion of the commissioner's report upon material already in, and the parties having appeared before the commissioner when it was first before him, and taken their evidence, and developed their cases, and it seeming that the parties had knowledge in fact of the commissioner's action, we do not think that we ought to reverse the case for that cause.

There was a petition of H. C. Thurmond filed in this case, setting up his assignment from Taylor, but it was foreign to the case, and no decree was entered thereon prejudicial to Taylor, and, while it is mentioned in the assignment of error, it is not insisted upon in argument, and no prejudice was done to Taylor on its account. Therefore we affirm the decree.

*Affirmed.*