JEREMIAH BUSHEE v. NATHAN ALLEN.

*Statute of frauds. Contract. Association. Book account*

The plaintiff and defendant were both members, and the latter was steward of the Methodist Episcopal Society in Pawlet. The defendant, in the discharge of his duties as steward, to provide for the support of preaching, said to the plaintiff, "I want you to board W." (their clergyman); "if you will do it I will see that you shall be well paid, and have the money for it." The plaintiff boarded W. relying on no one for his pay except the defendant. The defendant did not suppose he was becoming personally liable, but the plaintiff did not know that the defendant was an officer of the society; *Held*, that the contract was direct on the part of the defendant, and not within the statute of frauds, and that the plaintiff could recover of the defendant for the board of W.

The facts that an item of book account was not alluded to, or considered at the time of a settlement of accounts between the parties, and that on the trial of an action brought to recover such item the plaintiff gave no reason why it was not then alluded to, constitute strong evidence against the justice of the claim, but do not operate as a bar to it.

BOOK ACCOUNT. The auditor reported the following facts: The plaintiff's account was for boarding one Jason F. Walker, and keeping his horse from June 17, 1854, till July 2, 1855.

During those years the plaintiff and defendant were both members of the Methodist Episcopal Church and Society, in Pawlet, and the defendant was steward of such society, it being his duty as such to attend to its business affairs, and particularly to raise the funds, and make the necessary disbursements for the support of preaching.

In May, 1854, Rev. Jason F. Walker made an agreement with the society to act as their preacher until July, 1855, and it became necessary to make some arrangement for his board, and the keeping of his horse, during such portions of each week as he should spend in Pawlet during that time, and with that view the defendant said to the plaintiff "I want to hire you to board Mr. Walker, and keep his horse, whenever he comes to Pawlet, in each week during the year (meaning the conference year ending July 2d, 1855) ; and if you will do it, I will see that you shall be well paid, and have the money for it." The plaintiff replied that the defendant might send Mr. Walker to his house, which he did, and the plaintiff boarded him, and kept his horse, for the whole time during the period embraced in the plaintiff's account that Walker was in Pawlet. The auditor found that the sum charged by the plaintiff was reasonable, that the defendant, on the occasion of his conversation with the plaintiff above recited, was acting as an officer of the church, and on its behalf, and that he never contemplated any personal liability on his part for Walker's board and horse keeping, but that he did not inform the plaintiff that he was acting on behalf of the church, that the plaintiff did not know that the defendant was an officer of the church, and that he furnished Walker with board and horse keeping, upon no other reliance than the direct individual liability of the defendant for the same.

It also appeared that the plaintiff carried on the business of a tailor at Pawlet, and had a shop account against the defendant. In February, 1856, the defendant on being called upon by an attorney to settle his account with the plaintiff, brought his account against the plaintiff to the attorney, and a balance of three dollars and seventy-two cents was found due from the plaintiff to the defendant, and the former then executed his note for that amount, payable to the defendant, or bearer,

on demand, with interest, and delivered it to the defendant in settlement of this balance, and the respective book accounts of the parties were thereupon duly balanced. The subject of the plaintiff's account for Walker's board and horse keeping was not then alluded to between the parties. It appeared that about one year previous to the hearing before the auditor, the plaintiff's attorney, at his request, made out the account for Walker's board and horse keeping, which the plaintiff presented against the defendant in this case, and that except this the plaintiff never made any other entry, charge or memorandum for such board and horse keeping, and did not call on the defendant for the payment of this account until the fall of 1856. The plaintiff never charged any part of this account to Walker, nor called upon him for any payment upon it. It appeared that at the time of the hearing there were mutual unsettled book accounts between the plaintiff and Walker, but this account formed no part of the same. The plaintiff gave no reason why this account was not brought forward for settlement, or alluded to by him at the time of the settlement of his shop account with the defendant, in February, 1856, but it appeared that at and previous to that time, he kept no other account book except that containing his shop accounts.

The Methodist Church, in Pawlet, was an association or society formed agreeably to the usages and regulations of the Methodist Episcopal denomination of christians, but it had never been organized as a corporation under the laws of this State.

Upon this report the county court, at the March Term, 1858, —PIERPOINT, J., presiding,—rendered judgment for the plaintiff for the amount of his account, to which the defendant excepted.

*Horace Allen* and *Fayette Potter*, for the defendant.

1. The settlement of accounts between the parties made in February, 1856, and the entire omission of the item now in suit from consideration in such settlement, accompanied with the failure of the plaintiff to show any reason for such omission, constitute a bar to this claim; *Hodges* v. *Hosford*, 17 Vt. 615; *Spear* v. *Peck*, 15 Vt. 568; *Gibson* v. *Sumner*, 6 Vt. 163; *Stevens* v. *Damon*, 29 Vt. 521; *Warren* v. *Newfane*, 25 Vt. 250; *McLaughlin* v. *Hill*, 6 Vt. 20.

2. From the fact that the plaintiff and the defendant were both members of the Methodist Church or association, and that it was the defendant's duty, as steward, to see to the maintenance of preaching in that church, the law will imply a knowledge on the part of the former that the latter was an officer of the association; and that as such officer he procured the plaintiff to board the clergyman and keep his horse, for the benefit and in behalf of the association; *Roberts* v. *Button*, 14 Vt. 195; *Hinsdale* v. *Partridge*, *id*. 547; *Hall* v. *Huntoon*, 17 Vt. 244; *Abbott* v. *Cobb*, *ib*. 593; *Alexander* v. *Bank of Rutland*, 24 Vt. 222; *Ives* v. *Hulett*, 12 Vt. 314; *Woodstock Bank* v. *Downer*, 27 Vt. 482.

This case falls within the rule that one of several persons, jointly concerned for a common purpose, can not maintain an action at law against all or any of the others for work and labor, or other services performed for their joint benefit; *Cheney* v. *Clark*, 3 Vt. 431; *Albee* v. *Fairbanks*, 10 Vt. 314; *Eastman* v. *Wright*, 6 Pick. 316; *Warren* v. *Stearns*, 19 Pick. 73; *Holmes* v. *Higgins*, 1 B. & C. 74.

3. This was a parol contract to pay the debt of another, and is within the statute of frauds; *Skinner* v. *Conant*, 2 Vt. 453.

*Linsley & Prout* and *J. B. Bromley*, for the plaintiff.

1. The contract created a personal and direct liability on the part of the defendant, and was not within the statute of frauds; *Simons* v. *Heard*, 23 Pick. 125; *Arbuckle* v. *Hanks*, 20 Vt. 538; *Hinsdale* v. *Partridge*, 14 Vt. 547; Story on Agency sec. 266; *Hodges* v. *Green*, 28 Vt. 360.

2. Anything may be recovered in an action on book, not included in a former settlement; *Newell* v. *Keith*, 11 Vt. 214; *Berry* v. *Meigs*, 3 Vt. 58; *McLaughlin* v. *Hill*, 6 Vt. 20.

ALDIS, J.  I. Was the contract within the statute of frauds? The defendant said to the plaintiff, "I want to hire you to board Mr. Walker; if you will do it, I will see that you shall be well paid, and have the money for it." The plaintiff boarded Mr. Walker, the charge for which constitutes his account. It was never charged to Mr. Walker, or to anybody except the defendant. The auditor finds that the plaintiff furnished the board upon no other reliance than the direct individual liability

of the defendant. Clearly, the defendant was primarily liable, and there was no collateral liability.

II. Was the settlement of February 25, 1856, a bar to a recovery for this account?

1. The fair construction of the bill of exceptions shows that that was a settlement only of the plaintiff's shop accounts as tailor, and if so, could not include other account not included or intended to be adjusted.

2. But if the settlement were properly to be treated as a settlement of all book accounts between the parties, it would be only *prima facie* evidence of the settlement of this account. The burden of proof would be on the plaintiff to show that in fact it was not settled. It is admitted that it was not settled. On that point both parties agree. Being a just account and never having been settled, it can not be extinguished by a settlement that did not touch it.

The facts, that the account was not alluded to at the time of the settlement (supposing that settlement to have been intended as a settlement of all book accounts between the parties), and that on the trial before the auditor the plaintiff gave no reason why it was not then brought forward, were evidence strongly tending to show the account not a just one. But they do not operate as a bar to the suit. The account, if proved to be just and not settled, remained a valid debt; *Austin* v. *Berry et al..* 3 Vt. 58; *Darling* v. *Hall*, 5 Vt. 91; *Whiting* v. *Corwin*, 5 Vt. 451; *Stevens* v. *Damon*, 29 Vt. 521.

III. It is claimed that the Methodist Church in Pawlet, organized according to the usages and regulations of the Methodist Episcopal denomination in this State, was in the nature of a partnership; that the plaintiff and the defendant, being members of the church, were so far co-partners that the acts done by the defendant as a steward of the church, must be deemed to be done by the implied assent and knowledge of the plaintiff, even though he had in fact no such knowledge; and that the plaintiff in his dealings with the defendant as to the board of the clergyman, must be held, *prima facie*, as dealing with him as a steward, and can not be allowed to say, without actual proof of the fact, that he trusted him as an individual.

These views, and the ingenious argument in support of them, if adopted by the court would, we think, create no little consternation among the members of the Methodist communion. To attach such serious legal effects to membership of that church, would be wholly contrary to the intention of the parties, to the nature of the relation and the purposes of the association.

The plaintiff could deal with the defendant either as steward or upon his own responsibility as an individual. The auditor has found that the credit was given to the defendant as an individual. The defendant applied to the plaintiff, not as steward, but as an individual. The plaintiff did not know he was a steward. Under such circumstances, it was for the defendant to show that the credit was given not to him, but to the society of which he was an officer. This he has failed to do. The finding of the auditor settles the point.

The judgment of the county court is affirmed.