NAVARRO v. LAMANA. (No. 475.)

(Court of Civil Appeals of Texas. El Paso. Oct. 21, 1915. Rehearing Denied Nov. 18, 1915.)

1. PARTNERSHIP ☞336 — ACCOUNTING — COMMINGLED FUNDS—BURDEN OF PROOF.

Where the partnership books were shown to have been incorrectly kept, and in such manner that it was impossible to determine the proportion in which partnership and personal funds had been commingled by defendant partner, sued for an accounting by plaintiff partner, it became incumbent upon defendant definitely to show the amount of the credit to which he was entitled as represented by personal funds.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. ☞336.]

2. EVIDENCE ☞589—DISREGARD OF PARTY'S TESTIMONY.

In an action between partners for an accounting, the court could refuse credence to defendant's statement, totally uncorroborated, that he made a disbursement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. ☞589.]

3. PARTNERSHIP ☞346 — PARTNERSHIP ACCOUNTING—COSTS—STATUTE.

Under Rev. St. 1911, art. 2035, providing that the successful party to a suit shall recover of his adversary all costs, and article 2048, providing that the court may for good cause to be stated on the record adjudge the costs otherwise than as provided in preceding articles, where a partner, defendant in his partner's suit for an accounting, had kept the books of the firm, either fraudulently or negligently, in such manner that the appointment of an auditor was necessary to assist the court in ascertaining the amount of personal funds defendant had commingled with partnership funds, the court properly exercised its discretion in taxing all costs against him.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 820; Dec. Dig. ☞346.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by M. Lamana against Joe Navarro. Judgment for plaintiff, and defendant appeals. Affirmed.

Cole & Cole and A. B. Wilson, all of Houston, for appellant. Atkinson, Graham & Atkinson, of Houston, for appellee.

HIGGINS, J. Navarro and Lamana were partners doing business under the firm name of Star Bottling Works, in which business appellant owned five-eighths interest, and appellee three-eighths interest. Appellee instituted this suit, seeking a dissolution of the partnership and accounting. An auditor was appointed, who made his report to the court. Exceptions to portions thereof were filed by appellant. Pending a hearing on the exceptions, the parties settled by agreement all their partnership affairs as to the assets and physical properties of the business, leaving only for settlement the matter of the cash balance for division between the partners, a few items of which only were in dispute, as raised by appellant's exceptions to the auditor's report.

The exceptions were passed upon by the court and judgment rendered in sum of $504.-33 against Navarro and in favor of Lamana. In arriving at judgment the court found that appellant owed the partnership firm $779.90, of which he was due the appellee three-eighths as his part, or the sum of $292.44; and, it appearing that appellee had already paid $211.80 as his three-eighths of the fee of the auditor, in the sum of $565, the court also rendered judgment against appellant requiring him to repay appellee the amount so expended by appellee, appellant and appellee having previously paid the auditor under an agreement that it would not prejudice either's rights as to the proper taxation of the costs thereof when it came on for hearing.

Navarro was the managing partner, drew all checks, had charge of the cash and bank account, and kept the books of the company, with the assistance of a bookkeeper. According to the auditor's report, there was a difference between the books of the company and the company's bank account of $613.62, the bank account showing that much over and above what the books of the company showed the cash should have been, and there was an additional discrepancy between the receipts of the company as shown by its books and the bank deposits of $772.29, that amount appearing to have been placed in the bank over and above the receipts as shown by the partnership books. The auditor charged Navarro up with these two items, but of the first item $291.59 thereof was satisfactorily accounted for by Navarro, and the court allowed him credit therefor. It was also shown to the satisfaction of the court that the balance of the item mentioned and all

of the $772.29 consisted of an overage in the bank deposits; that is, the bank deposits exceeded by these amounts the actual receipts of the business of the partnership. This overage in bank deposits, it was found by the lower court, arose in this manner: Navarro used the bank account of the partnership for his personal business transactions and for the partnership. He mingled his personal and the partnership monies in the partnership bank account. In so doing he relied upon the company's books to show how much belonged to the partnership and how much belonged to him personally. He was a man of considerable means, aside from his partnership interest. Part of the discrepancies indicated probably occured by the practice of Navarro drawing the company's checks payable to cash with which he would pay his employés, and, when the check was surrendered by the bank, he would frequently destroy it, being under the erroneous impression that it would not affect the company's accounts, as he had already charged it to pay roll expense. This practice would show a disbursement by a debit against Navarro for the same amount represented by the check drawn on the bank. By this means the books of the company would show a double disbursement, when, in fact, only one had been made. The overage in the bank account was further augmented by the defendant's practice of crediting himself with $12 weekly, according to partnership agreement, and frequently failing to withdraw it from the bank. He proceeded upon the theory that, upon settlement of the company's affairs, he would be responsible for everything its books showed had been received, and the balance left in the bank would be his property. The auditor charged him with all unidentified debits of the company; that is, he was charged with all money that went into and was withdrawn from the bank, whether or not there was anything to show that it was partnership funds, or was spent for its account. There was also on hand in the partnership cash drawer at the time the auditor took charge of the books the sum of $130.75.

The court found that the items of $613.62 and $772.29 were overages in the partnership's bank account created in the manner indicated, and allowed defendant credit therefor. It was further found that the item of $130.75 was not an overage, as were the other two items, and defendant was charged therewith. Complaint is here made of the refusal to allow credit for this item.

[1] It is asserted that in a suit between partners for accounting the account books, to which both partners have access, are prima facie evidence of the true account between the partners, and that in such accounting the result shown by the books must control, unless it is clearly shown that such books are incorrect. With this proposition as a premise, it is then insisted that, since it' was not shown that the cash item in question was received in payment for sales not reflected by the books, defendant should not be charged therewith, since to do so would be to hold him liable for all cash on hand, as well as all receipts on hand as shown by the books; that, if he is to be charged with all "shorts" in the way of unidentified debits of the business, he should be credited with all "overs" in the way of unidentified credits. And it is argued that the item of cash in the drawer occupied precisely the same status as the funds in the bank, and that, if the court allowed credit for the bank overage deposits, in like manner credit should be allowed for the overage in the cash drawer. To all this it may be replied, in the first place, that the books are shown to have been incorrectly kept, and in such a manner that it was impossible to determine therefrom the proportion in which partnership and personal funds had been commingled by Navarro. In such case it became incumbent upon him to definitely show the amount of credit to which he was entitled, as represented by personal funds. This he failed to do, and the court might properly have refused to allow him credit for any part of the overages, except above mentioned $291.59, which it was shown consisted of four checks drawn, but which had not been cashed by payees upon the audit date. He has no just ground of complaint because the court did not extend its indulgence to cover the item in the cash drawer as well as the bank deposit overages.

[2] Error is also assigned to the refusal to allow a credit of $75 claimed by defendant to have been paid to certain parties as a bonus to construct a soda water stand in the city park. The court found that no such sum was paid, and, if it was paid, it was an improper expenditure of partnership funds. In the condition of the record, the finding that such sum was not paid cannot be set aside. The auditor's report merely shows that it was a disbursement reported as made. Credit therefor was not allowed, for the assigned reason that there was no authority to make the disbursement. It is true Navarro testified he made the disbursement, but this testimony was not corroborated in any way, and, he being the defendant in the action, the court was authorized in refusing credence to his statement that he had made the disbursement. Thomas v. Saunders, 150 S. W. 769; Gonzales v. Adoue, 56 S. W. 543; Turner v. Groge, 24 Tex. Civ. App. 554, 59 S. W. 585; Insurance Co. v. Villeneuve, 29 Tex. Civ. App. 128, 68 S. W. 203; Railway Co. v. Lucas, 148 S. W. 1149.

[3] We are further of opinion that the trial court properly taxed the auditor's fee and all other costs against Navarro, and the assignment complaining of this phase of the case is overruled. Navarro fraudulently or negligently kept the books of the company in such a manner that the appointment of an auditor became necessary in order to assist the court in ascertaining the amount of per-

sonal funds he had mingled with partnership funds and in arriving at an intelligent accounting between the parties. His improper conduct occasioned the litigation and the necessity for appointment of auditor, and the court did not improperly exercise its discretion in taxing all costs against him. Upon the contrary, we think it most properly exercised articles 2035 and 2048, R. S.; 30 Cyc. 749.

Affirmed.